UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAROL PHILLIPS,

       Plaintiff,

v.                               Case No. 1:07-cv-675
                               Hon. Janet T. Neff

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for supplemental security income (SSI).

Plaintiff was born on June 12, 1955 and has a high school education (AR 55, 84).[1] She alleges a disability onset date of June 1, 1991 (AR 32, 55, 59). Plaintiff has not been employed in the past 15 years (AR 57, 79). Plaintiff identified her disabling conditions as mental illness, panic attacks, asthma, allergies, "dermatology problems," and being overweight (AR 78). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on August 15, 2005 (AR 32-41). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).   A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only.  This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record.  *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence.  *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits.  A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d

2

918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-

step analysis:

> The Social Security Act requires the Secretary to follow a "five-step
> sequential process" for claims of disability.  First, plaintiff must demonstrate that she
> is not currently engaged in "substantial gainful activity" at the time she seeks
> disability benefits. Second, plaintiff must show that she suffers from a "severe
> impairment" in order to warrant a finding of disability.  A "severe impairment" is one
> which "significantly limits . . . physical or mental ability to do basic work activities."
> Third, if plaintiff is not performing substantial gainful activity, has a severe
> impairment that is expected to last for at least twelve months, and the impairment
> meets a listed impairment, plaintiff is presumed to be disabled regardless of age,
> education or work experience. Fourth, if the plaintiff's impairment does not prevent
> her from doing her past relevant work, plaintiff is not disabled. For the fifth and final
> step, even if the plaintiff's impairment does prevent her from doing her past relevant
> work, if other work exists in the national economy that plaintiff can perform, plaintiff
> is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The federal court applies the same same five step sequential analysis applied in both SSI cases and

disability cases.  *See Farris v. Secretary of Health and Human Services*, 773 F.2d 85, 88-89 (6th Cir.

1985).

The claimant bears the burden of proving the existence and severity of limitations

caused by her impairments and the fact that she is precluded from performing her past relevant work

through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).

However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant

number of jobs in the economy that accommodate the claimant's residual functional capacity

(determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not

disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861

F.2d 991, 993 (6th Cir. 1988).  "The proper inquiry in an application for SSI benefits is whether the

plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. Following the five steps, the ALJ initially found that plaintiff has not engaged in substantial gainful activity since the alleged onset of disability (AR 40). Second, the ALJ found that she suffered from severe impairments of schizo affective disorder, chronic obstructive pulmonary disease and eczema (AR 40). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 40). The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC) to:

> perform light, unskilled work at entry level with low stress. She should have no contact with the public and only limited contact with co-workers. She is limited to a clean air environment and should not work around heights or dangerous machinery.

(AR 40). The ALJ also found that plaintiff has no past relevant work (AR 40).

At the fifth step, the ALJ determined that plaintiff had the RFC to perform a significant range of light work (AR 40). Specifically, the ALJ found that plaintiff could perform the following work in the regional economy (i.e., the lower peninsula of Michigan): sorter (800 jobs); dishwasher (4,000 jobs); packager (1,500 jobs); mail sorter (1,500 jobs); and assembler (8,000 jobs) (AR 39). Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 40-41).

## III. ANALYSIS

Plaintiff raises two issues on appeal:

> **A.    Did the ALJ base his decision on the substantial evidence of the whole record in denying disability benefits,**

4

> especially after the ALJ found the claimant has no work
> history and the burden shifts to the SSA?

B.    **Did the ALJ err in failing to give treating psychologist
      [sic], Christine Olson, M.D. and psychiatric nurse
      Stephanie Sethi, R.N., N.P. any weight as a treating
      doctor?**

The court will address these issues together.  In evaluating plaintiff's claim, the ALJ

noted that nurse practitioner (NP) Sethi wrote a letter dated October 12, 2004, which reported that

plaintiff was unable to work due to ongoing symptoms related to her illness (AR 37, 205-07):

> [Plaintiff] has been a client of Community Mental Health - Livingston
> County since 1982.  She is treated for diagnosis of Schizo-Affective Disorder.
>
> [Plaintiff] is unable to work due to ongoing symptoms related to her illness.
> [Plaintiff] has difficulty with racing thoughts, rapid hyperverbal speech, and
> disorganized thoughts which make it difficult for her to maintain steady employment.

(AR 305).  The ALJ discounted this letter because NP Sethi was not an "acceptable medical source"

under the regulations (AR 37).  *See* 20 C.F.R. §§ 404.1513(a); 416.913(a).  Although Dr. Olson co-

signed the letter, the ALJ felt that the doctor "did not add anything" to the letter's contents (AR 37,

205).[2]

As an initial matter, the court disagrees with the ALJ's conclusion that Dr. Olson's

signature on the letter was meaningless.  The record reflects that Dr. Olson was involved in

plaintiff's treatment.  For example, Dr. Olson reviewed plaintiff's medication plan proposed by NP

Sethy (AR 127), and she reached a similar conclusion regarding plaintiff's RFC in an assessment

completed in February 2005 (AR 211).  At the very least, the doctor's decision to co-sign a letter

from a nurse practitioner indicates an agreement with the opinions expressed in the letter.

---

[2] The ALJ sometimes refers to Dr. Olson as "Dr. Olsen" (AR 35).

As the ALJ pointed out, NP Sethi is not an "acceptable medical source," which is defined as licensed physicians (medical or osteopathic), licensed or certified psychologists, licensed optometrists (for measurement of visual acuity), licensed podiatrists (for purposes of establishing impairments of the foot and ankle), and qualified speech-language pathologists (for purposes of establishing speech or language impairments).  *Id.* at §§ 404.1513(a); 416.913(a).  Under the regulations, "acceptable medical sources" can give "medical opinions," which are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." *Id.* at §§ 404.1527(a)(2); 416.927(a)(2).

Under the regulations, NP Sethi is considered an "other source" of evidence, which includes medical sources not listed in §§ 404.1513(a) and 416.913(a), such as nurse practitioners, physicians' assistants, naturopaths, chiropractors, audiologists and therapists.  *See id.* at §§ 404.1513(d)(1); 416.913(d)(1).  Even though NP Sethi treated plaintiff, her opinion is viewed as evidence from an "other source," rather than as a "medical opinion" from an "acceptable medical source" (such as a physician) that can be given controlling weight.  *See* §§ 404.1513(d)(1); 404.1527(d)(2); 416.913(d)(1); 416.927(d)(1).  *See also, Walters v. Commissioner of Social Security*, 127 F.3d 525, 530 (6th Cir. 1997) (the Commissioner will give controlling weight to a treating, acceptable medical source's opinion on the issues of the nature and severity of a claimant's impairments, if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record") (*quoting* § 404.1527(d)(2)). Nevertheless, the regulations provide that the Commissioner

may use evidence from "other sources" (such as nurse practitioners) to show the severity of a claimant's impairments.  *Id.* at §§ 404.1513(d); 416.913(d).

The Commissioner recently clarified the method for evaluating opinions from "other sources" that are not "acceptable medical sources" in SSR 06-03p (eff. Aug. 9, 2006).[3]  In adopting SSR 06-03p, the Commissioner acknowledged that with the growth of managed health care in recent years, nurse practitioners have increasingly assumed a greater percentage of treatment and evaluation functions previously handled primarily by physicians and psychologists.  SSR 06-03p. The Commissioner recognized that opinions from other medical sources, such as nurse practitioners and therapists, "are important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file."  *Id.*  Specifically, SSR 06-03p requires an ALJ to consider the opinions expressed by these "other" medical sources:

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case. In addition, when an adjudicator determines that an opinion from such a source is entitled to greater weight than a medical opinion from a treating source, the adjudicator must explain the reasons in the notice of decision in hearing cases and in the notice of determination (that is, in the personalized disability notice) at the initial and reconsideration levels, if the determination is less than fully favorable.

*Id.*

---

[3] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency.  20 C.F.R. § 402.35(b)(1).

Although SSR 06-03p was adopted after the ALJ's decision, it applies in this case because the ALJ's decision did not become final until after the Commissioner adopted the ruling.[4] Under these circumstances, the ALJ's failure to address NP Sethi's opinion pursuant to SSR 06-03p amounted to error. *See, e.g., Cruse v. Commissioner of Social Security*, 502 F.3d 532, 540-42, n. 2 (6th Cir. 2007) (noting that "[f]ollowing SSR 06-03P, the ALJ should have discussed the factors relating to his treatment of [the nurse practitioner's] assessment, so as to have provided some basis for why he was rejecting the opinion"); *Watson v. Commissioner*, No. 5:06-cv-153, 2007 WL 4557859 (W.D. Mich. Dec. 20, 2007) (ALJ's decision reversed and remanded, where the ALJ failed to evaluate the nurse practitioner's treatment and opinions pursuant to SSR 06-03p). However, for the reasons stated below, the court concludes that any error was harmless, because a remand would not lead to a different result. *See Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("[n]o principle of administrative law or common sense requires [a reviewing court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").

In reaching this conclusion, the court notes Dr. Olson wrote a virtually identical evaluation of petitioner to the October 12, 2004 letter only four months later, which the ALJ did consider. In February 2005, Dr. Olson summarized plaintiff's mental RFC as follows:

> [Plaintiff] has been treated for a diagnosis of schizo affective disorder since 1982. She has difficulty with racing, disorganized thoughts & rapid hyperverbal speech. She has difficulty concentrating and has not been able to maintain steady employment.

---

[4] The court does not fault the the ALJ for failing to consider SSR 06-03p. The SSR was not in effect when he entered the decision on August 15, 2005, but was adopted while the decision was pending before the Appeals Council. The ALJ's decision became final on May 23, 2007, when the Appeals Council denied her request for review (AR 6-8). *See Sims v. Apfel,* 530 U.S. 103, 106-07 (2000) ("if . . . the Council denies the request for review, the ALJ's opinion becomes the final decision").

(AR 211).  In reaching this determination, Dr. Olson observed that plaintiff was markedly limited in the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to work in coordination with or proximity to others without being distracted by them; and, the ability to interact appropriately with the general public (AR 209-10).  However, the doctor found that plaintiff was not significantly limited in the ability: to remember locations and work-like procedures; to understand and remember very short and simple instructions; to carry out very short and simple instructions; to ask simple questions or request assistance; and, to be aware of normal hazards and take appropriate precautions (AR 209-10).  In addition, the doctor concluded that plaintiff was only moderately limited in other areas of mental activity such as the ability: to perform activities within a schedule; maintain regular attendance; to be punctual within customary tolerances; to sustain an ordinary routine without special supervision; to make simple work-related decisions; to accept instructions and respond appropriately to criticism from supervisors; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; to respond appropriately to changes in the work setting; and to set realistic goals or make plans independently of others (AR 209-10).

The ALJ's RFC determination addressed Dr. Olson's restrictions when it limited plaintiff to light, unskilled work at entry level with: low stress; no contact with the public; limited contact with co-workers;  avoidance of heights or dangerous machinery; and at a location with a clean air environment (AR 40).  Based on these limitations, the ALJ found that plaintiff retained the capacity to perform some 15,800 jobs in the national economy.[5]

[5]To the extent Dr. Olson's October 2004 letter also opined that petitioner"was unable to work" due to her illness, a comment not made in Dr. Olson's February 2005 assessment, the court notes that a determination of whether a petitioner is able to work within the meaning of social security disability law lies within the province of the Secretary, not the medical care provider.  *See, Houston v. Secretary of Health and*

9

Plaintiff contends that the ALJ failed to meet his burden at step five of sequential analysis by failing to identify a significant number of jobs in the economy that accommodate her RFC. The court disagrees. An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through reliance on the testimony of a vocational expert (VE) in response to a hypothetical question which accurately portrays the claimant's physical and mental impairments. *Id.* Here, the ALJ posed a hypothetical question to the VE which contained restrictions virtually identical to the RFC determination.[6] The VE testified that a person with those limitations could perform some 15,800 jobs (i.e., production sorter, dishwasher, packager, mail clerk, assembler) (AR 428-29). It appears that the VE identified 90,800 jobs at the light exercise level, but reduced this number to 15,800 positions due to plaintiff's non-exertional limitations (AR 429-31). The record reflects that the ALJ identified jobs that accommodated Dr. Olson's restrictions. Accordingly, a remand directing the ALJ to consider the opinions expressed in the October 12, 2004 letter would not lead to a different result. *Fisher*, 869 F.2d at 1057.

Finally, plaintiff contends that the ALJ erred by ignoring the testimony of plaintiff's sister-in-law, Carla Phillips, a licensed practical nurse (AR 422-28). Carla Phillips testified that plaintiff: will talk really fast about things that might not be true; get all fidgety; has a hard time

---

*Human Services*, 736 F.2d 365, 367 (6th Cir. 1984).

[6] The hypothetical question posed to the VE arguably included more restrictions (and presumably would identify fewer jobs) than the ALJ's RFC determination. While the ALJ's RFC referred to "light, unskilled, entry level work," the hypothetical question posed to the VE further described the work as involving "one or two step work processes" (AR 429).

following through on housework and projects; is very nervous; and is overwhelmed by small tasks (AR 425-27). Carla Phillips did not question plaintiff's physical ability to "do a hands on job," but that she could not complete tasks because "every little thing is overwhelming" (AR 427).

The ALJ's failure to specifically discuss Carla Phillips' testimony does not constitute error. The Commissioner must provide a statement of evidence and reasons on which the decision is based. *See* 42 U.S.C. § 405(b)(1). However, it is unnecessary for the ALJ to address every piece of medical evidence. *See Heston v. Commissioner of Social Security*, 245 F.3d 528, 534-35 (6th Cir. 2001) (ALJ's failure to discuss a doctor's report was harmless error because the reviewing court should consider all of the evidence in the record).

After considering all of the evidence in the record, the court concludes that the ALJ's decision is supported by substantial evidence including: Dr. Olson's opinions; the mental RFC assessment prepared by the DDS psychiatrist, Thomas Tsai, M.D. (concluding that plaintiff has some moderate mental impairments but can perform unskilled work); and plaintiff's daily activities (which include housework, caring for cats, preparing meals, embroidery, yard work, reading, watching television, talking to friends, shopping, errands, rolling her own cigarettes, paying bills, and writing poetry) (AR 87-103). In this regard, the ALJ noted that plaintiff had "very little problems with her activities of daily living"(AR 37). *See generally, Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993) (a claimant's ability to perform household and social activities on a daily basis is contrary to a finding of disability); *Gist v. Secretary of Health and Human Services*, 736 F.2d 352 (6th Cir. 1984) (a claimant's capacity to perform daily activities on a regular basis will militate against a finding of disability).

IV.     **Recommendation**

Notwithstanding the shortcomings of the ALJ's opinion, I respectfully recommend that the Commissioner's decision be affirmed.

Dated:  July 2, 2008                                    /s/ Hugh W. Brenneman, Jr.
                                                        HUGH W. BRENNEMAN, JR.
                                                        United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).